UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MATTHEW LOLLIS, | No. 2:22-cv-0486 WBS DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ZELL, et al., | |
| Defendants. | |

Plaintiff, an inmate proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff proceeds on a claim that defendants violated his rights under the First Amendment. Presently before the court is defendants' motion for summary judgment. (ECF No. 49.) For the reasons set forth below, the undersigned will recommend that the motion be denied.

## BACKGROUND

**I.   Relevant Procedural History**

Plaintiff filed his second amended complaint ("SAC") on August 1, 2022. (ECF No. 21.) The court screened the SAC and found that plaintiff's allegations were sufficient to state a cognizable First Amendment retaliation claim. (ECF No. 22.) Defendants filed their answer on May 5, 2023. (ECF No. 41.)

////

////

1

Defendants filed the instant motion for summary judgment on January 26, 2024.  (ECF No. 49.)  Plaintiff filed an opposition (ECF No. 50),[1] and defendants filed a reply (ECF No. 53).

**II.       Allegations in the Second Amended Complaint**

In the SAC, plaintiff identifies two defendants: Correctional Officers L. Mundy and M. Sevy.  (ECF No. 21 at 2.)  Plaintiff contends that he told Mundy that he was having some family issues, and Mundy told him that he would be unable to make a phone call because he was quarantined.  (Id. at 3.)  Plaintiff asked to see a mental health provider, and Mundy asked if plaintiff was suicidal.  (Id.)  Plaintiff said that he was not suicidal, and Mundy refused to allow plaintiff to see the mental health provider, allegedly saying "[t]hen, nigga please!"  (Id. at 3-4.)  Plaintiff told Mundy that he would sue him for being racist.  (Id. at 4.)  Mundy allegedly responded saying "[n]igga, you need to calm down before I write your ass up!"  (Id.)  Plaintiff then told Sevy that Mundy was using racist language and Sevy did nothing, but stated "[l]ike he said, calm down or you'll get a write-up!"  (Id. at 4-5.)  Plaintiff told defendants he intended to file a grievance that they were both using racist language.  (Id.)

Sevy then wrote plaintiff up for a rules violation—disrespect without the potential for violence or disruption.  (Id. at 5.)  Plaintiff contends that Sevy accused him of talking aggressively through his cell door and saying that plaintiff "is going to become disruptive to [your] program and 'I have 90 years, I don't give a fuck.  I will sell everything I own and have my lawyers on everyone here. . . .  I'll say all of yall are racist."  (Id.)  Plaintiff contends defendants' statements in the rules violation report ("RVR") were false and that they wrote plaintiff up in retaliation for plaintiff's threat to file a grievance.  (Id. at 5-7.)

////
////
////

---

[1] Defendants allege that plaintiff's opposition was late under Local Rule 230(c).  (See ECF No. 53 at 3.)  However, Local Rule 230(l) applies in prisoner actions, which gives the incarcerated party twenty-one days to oppose a motion, not fourteen days.  Even though plaintiff's opposition still appears to be filed later than the time allotted by the Local Rules, the court accepted and will consider plaintiff's opposition.  See Stroud v. Gore, No. 18-cv-515 JLS MDD, 2022 WL 837423, at *6 (S.D. Cal Mar. 21, 2022).

# MOTION FOR SUMMARY JUDGMENT

**I.   Parties' Filings**

    **A.  Defendants' Motion**

Defendants filed a motion for summary judgment, arguing that defendants did not retaliate against plaintiff and that defendants are entitled to qualified immunity.  (ECF No. 49 at 8, 11.)  Defendants argue that there is no causal connection between the RVR defendants issued plaintiff and plaintiff's protected conduct.  (Id. at 9.)  Even if plaintiff did not threaten to sue defendants, they would have still issued plaintiff the RVR for his conduct of "yelling obscenities, threatening to disrupt prison programming, and refusing to adhere to Covid-19 protocols."  (Id. at 10.)  Defendants also argue that the RVR served a logical penological interest by discouraging disrespect of prison staff and maintaining institutional order and discipline.  (Id. at 11.)

    **B.  Plaintiff's Opposition**

Plaintiff opposed the motion, arguing that defendants issued the RVR in response to plaintiff saying that he would file grievances against defendants (ECF No. 50 at 9), and that there is "no penological objective in issuing false RVR in retaliation for exercising a right to file grievances" (id. at 12).  Plaintiff included his response to defendants' separate statement of undisputed facts (ECF No. 50-1), and a declaration supporting his opposition (ECF No. 50-2).

    **C.  Defendants' Reply**

Defendants filed a reply arguing that plaintiff's opposition does not comply with Local Rule 230(c) because it was filed late, that the evidence plaintiff provided to support his opposition is inadmissible because it was not produced during discovery, and that there is no triable issue on retaliation claim.  (ECF No. 53 at 3, 4-5.)

**II.   Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d

376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the

4

verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

////

////

1  party "must do more than simply show that there is some metaphysical doubt as to the material

2  facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

3  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

4  omitted).

5        On January 26, 2024, defendants advised plaintiff of the requirements for opposing a

6  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

7  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

8  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

9  **III.   Material Facts**

10      **A. Undisputed Facts**

11        Plaintiff alleges that on January 15, 2022, defendants retaliated against him by issuing a

12  RVR after he threatened to sue them for racism. (ECF No. 21.) Plaintiff was quarantined due to

13  Covid-19 exposure. (ECF No. 49-4 at 2; ECF No. 50-1 at 2-3; ECF No. 49-1 at 2; ECF No. 49-2

14  at 2.) Plaintiff informed Mundy that he was dealing with family issues and wanted to call a

15  family member. (ECF No. 49-4 at 2; ECF No. 50-1 at 3; ECF No. 49-1 at 2.) Defendants did not

16  allow plaintiff to make a phone call. (ECF No. 49-4 at 2; ECF No. 50-1 at 2-3.) Plaintiff asked

17  Mundy if he could speak to a mental health therapist, and after confirming that plaintiff was not

18  suicidal, Mundy declined. (ECF No. 49-4 at 2; ECF No. 50-1 at 3; ECF No. 49-1 at 2.) Plaintiff

19  raised his voice and called Mundy a racist name.[2] (Id.) Defendants issued a RVR against

20  plaintiff. (ECF No. 49-4 at 3; ECF No. 50-2 at 4.) A disciplinary hearing was held on February

21  22, 2022, where plaintiff was found guilty of the RVR and assessed a penalty of a 30 day loss of

22  canteen and packages privileges. (ECF No. 49-4 at 3; ECF No. 49-3; ECF No. 50-1 at 6.)

23      **B. Disputed Facts**

24        The disputed facts are as follows. After plaintiff asked for a phone call, defendants allege

25  they confirmed with the sergeant on duty that plaintiff must remain in his cell because he was

---

[2] In plaintiff's response to defendants' undisputed facts in his opposition the motion for summary judgment, plaintiff "admits" that he called Mundy a "house nigger," (ECF No. 50-1 at 4; ECF No. 49-4 at 2), so the court is including it in the undisputed facts. However, plaintiff does not mention this in his complaint or declaration supporting his opposition.

1  quarantined, and that they explained this to plaintiff.  (ECF No. 49-4 at 2; ECF No. 49-1 at 2.)
2  Plaintiff denies this and denies that prisoners were not allowed to leave their cells to make
3  emergency phone calls.  (ECF No. 50-1 at 2-3.)  Defendants allege that plaintiff became
4  aggressive and raised his voice after he was denied a phone call or access to therapist and plaintiff
5  denies this.  (ECF No. 49-4 at 2; ECF No. 49-1 at 2; ECF No. 50-1 at 3.)  Defendants allege that
6  plaintiff "became irate, raised his voice, warned that he was going to become disruptive to prison
7  programming and stated 'I have 90 years, I don't give a fuck.  I will sell everything I own and
8  have my lawyers on everyone here. . . .  I'm going to be a pain in your asses then I'll get my
9  lawyers on you.'"  (ECF No. 49-4 at 3; ECF No. 49-2 at 2.)  Plaintiff denies saying this.  (ECF
10 No. 50-1 at 5; ECF No. 50-2 at 4-5.)  Defendants say that Mundy did not use a racist epithet
11 against plaintiff.  (ECF No. 49-4 at 3; ECF No. 49-1 at 2; ECF No. 49-2 at 2.)  Plaintiff disagrees.
12 (ECF No. 50-1 at 6.)

## LEGAL STANDARDS

### I. First Amendment Retaliation

It is well-established that prisoners retain a First Amendment right to file prison grievances, and that retaliation against prisoners for their exercise of this right is itself a constitutional violation.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  The plaintiff must plead facts that suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

The issuance of a false RVR is an adverse action that would chill the First Amendment rights of a person of ordinary firmness.  Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997).  In the Ninth Circuit, an inmate's threat to file a grievance is protected conduct.  See Entler v. Gregoire, 872 F.3d 1031, 1039-43 (9th Cir. 2017).

## II. Qualified Immunity

Qualified immunity is a defense that must be pled by a defendant official. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Even if a constitutional violation occurred, prison officials are entitled to qualified immunity if they acted reasonably under the circumstances. See Friedman v. Boucher, 580 F.3d 847, 858 (9th Cir. 2009); Anderson v. Creighton, 483 U.S. 635, 646 (1987). The doctrine of qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) (quoting Harlow, 457 U.S. at 818). The qualified immunity analysis involves two parts, determining whether (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009)); see Pearson, 555 U.S. at 232, 236; see also Bull v. City & County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010).

## ANALYSIS

### I. Plaintiff's Declaration in Support of Opposition

Defendants argue that plaintiff's declaration in support of his opposition should be disregarded because it was not disclosed during discovery. (ECF No. 53 at 3.) Defendants also ask the court to exclude all documents filed in support of the opposition that were not produced during discovery as unfairly prejudicial. (Id.) However, Federal Rule of Civil Procedure 56(c)(4) allows for declarations to be used to oppose a motion that are made on personal knowledge. Defendants fail to show plaintiff was required to produce a document reflecting his own testimony, rather than the testimony of witnesses, in response to the document production request. Additionally, the exhibits attached to plaintiff's opposition were either filed with plaintiff's complaint (ECF No. 21 at 14; id. at 17) or were defendants' own responses to plaintiff's requests for admissions (ECF No. 50-2 at 13; id. at 17). Therefore, defendants had prior access to the exhibits filed with plaintiff's opposition.

Case 2:22-cv-00486-WBS-DB   Document 54   Filed 06/27/24   Page 9 of 11

Further, defendants argue that plaintiff introduced a new factual basis in his opposition by claiming that defendants "warned him that if he [plaintiff] wrote them up, they would write him up, too." (ECF No. 53 at 4.) The sham affidavit rule arises when the declarant's declaration contradicts earlier deposition testimony. Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir.2009); see Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir.1991) (holding a court may discount a "sham" declaration that "flatly contradicts" prior deposition testimony, and has been provided for the sole purpose of creating a genuine issue of material fact.) The underlying rationale of the sham affidavit rule is that a party may not "manufacture a bogus dispute with himself to defeat summary judgment." Davis, 571 F.3d at 928 (emphasis omitted).

While the wording in plaintiff's declaration supporting his opposition emphasizes that the RVR was issued as a direct response to plaintiff's threat to file a grievance against the officers, this is essentially the same argument that plaintiff makes in his complaint and deposition. (See ECF No. 21 at 4; ECF No. 53-3 at 27-28 (alleging in his deposition that defendants wrote the RVR to "silence [plaintiff] from writing [grievances]").) Plaintiff's declaration does not "flatly contradict" prior statements. Plaintiff is alleging that defendants issued the RVR because he threatened to file a grievance against defendants, and that is plaintiff's argument in his complaint, declaration, and deposition.

Therefore, the court will consider plaintiff's declaration and the attached exhibits.

## II. First Amendment Retaliation

First, defendants argue that they did not write the RVR because plaintiff threatened to file a grievance against them, but rather, because plaintiff engaged in disruptive and disrespectful behavior including "yelling obscenities, threatening to disrupt prison programming, and refusing to adhere to Covid-19 protocols." (ECF No. 48 at 10.) Therefore, according to defendants, the claimed adverse action (issuing the RVR) would have been taken whether or not plaintiff threatened to file a grievance. (Id.)

However, under plaintiff's sworn allegations, the RVR "falsely accus[ed] plaintiff of conduct he never engaged in" (ECF No. 21 at 7), was "falsely embellished" (ECF No. 50-2 at 4, 5), and "falsely claim[ed]" that plaintiff became "very aggressive" (ECF No. 50-2 at 4). The

9

1  RVR was issued shortly after plaintiff informed defendants he was going to file a grievance. ECF

2  No. 21 at 4-5; ECF No. 50-2 at 4; see McCollum v. Cal. Dep't of Corr. & Rehab., 647 F.3d 870,

3  882–83 (9th Cir. 2011) (timing of the adverse action can be circumstantial evidence of a

4  retaliatory motive). Plaintiff alleges that he did not engage in "any threatening, aggressive, or

5  disruptive conduct" with Mundy and Sevy. (ECF No. 21 at 7; see ECF No. 50-2 at 5.) The court

6  does not weigh evidence or make credibility determinations at the summary judgment stage. See

7  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Thus,

8  the court cannot determine at this stage that defendants would have issued plaintiff an RVR even

9  if plaintiff did not threaten to file a grievance against them.

10  Second, defendants argue that issuing the RVR served a legitimate penological interest of

11  discouraging disrespect of prison staff and maintaining institutional order and discipline. (ECF

12  No. 49 at 11.) Prisoners alleging retaliation claims must demonstrate the alleged retaliation did

13  not advance legitimate penological interests, such as the preservation of institutional order,

14  discipline, and security. Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). "The plaintiff

15  bears the burden of pleading and proving the absence of legitimate correctional goals for the

16  [retaliatory] conduct [at issue]." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

17  Whether the RVR advanced legitimate penological interests depends on the resolution of

18  disputed material facts. Plaintiff's evidence, if believed, suffices to show an adverse action,

19  protected conduct, and a chill of his First Amendment rights. See Entler, 872 F.3d at 1039-43;

20  Hines, 108 F.3d at 269. A reasonable factfinder believing plaintiff's evidence could find

21  defendants issued the RVR for retaliatory ends.

22  **III. Qualified Immunity**

23  Defendants also assert they are entitled to qualified immunity because they did not violate

24  plaintiff's First Amendment right against retaliation, and that even if plaintiff's rights were

25  violated, "it would not have been clear to a reasonable official in [d]efendants' position that

26  ////

27  ////

28  ////

issuing [plaintiff] an RVR for his disrespectful and disruptive behavior was unlawful." (ECF No. 49 at 12.)  This argument, also based on defendants' version of the facts, should be rejected because defendants' version of the facts has been fairly disputed by plaintiff.

For all these reasons, summary judgment should be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 49) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 26, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:18
DB/DB Prisoner Inbox/Civil Rights/S/loll0486.msj.fr

11